numbers 20-2833 and 20-2834. And we'll hear from counsel for the appellate and ask if she would like to reserve some time for a bottle. Good morning, Your Honor. With your court's permission, I'd like to reserve three minutes. Okay, that'll be granted. May it please the court, Lon McIntyre, appearing on behalf of defendants and appellants Andover Sub-Acute, Mr. Scheinbaum and Mr. Schwartz. In this case, this case is arising out of this once in a lifetime event, a national pandemic in which over 500,000 lives have been lost. The appeal involves a jurisdictional issue of whether cases raising claims against our nursing homes response to the pandemic must be heard in federal court. We contend these cases belong in federal court. We've identified three jurisdictional bases for this court to hear these cases. First, we've identified the complete preemption doctrine that establishes that the PrEP Act completely preempts state law claims, provides an exclusive federal remedy, and an exclusive federal cause of action for these claims that gives everyone everything that they need to meet the challenge of the pandemic and to address the losses caused by the pandemic. We also have identified federal officer jurisdiction as a basis for jurisdiction in this court. And under the federal officer jurisdiction arguments that we make, we've established that these nursing homes were acting under and in assistance to the federal government in the manner in which it responded to the pandemic that swept through these nursing homes. On that one, what separates your client's actions from subjection and control versus compliance with ordinary regulation? Well, I think that we have several additional factors in this case that take it outside the Watson test, which says that it's only if you're only a highly regulated industry that you are not acting as a federal officer. First, we have the fact that these nursing homes are designated as part of a critical infrastructure in this country to respond as first responders to this national pandemic. Secondly, we have a historic relationship between the federal government and its regulation of not only regulation of the population that is served by these nursing homes, but also the federal government's interest in assuring that adequate care is provided to this vulnerable population. There are many regulations out there. I mean, is there something more in terms of your relationship with the government that would make you the client's federal officers? Or are they just complying by regulations like a lot of businesses do? Well, in this instance, there is that something more that Watson left open for us to consider. We have the federal government's recognition early on in this pandemic that it needed the assistance of nursing homes and health care providers to protect the welfare of vulnerable populations they serve in the national response to the pandemic. We have very COVID specific regulations and directives that address the actions that the federal government wanted these nursing homes and other health care providers to take throughout the in specifically in response to this pandemic. Are you saying this covers all health care providers who were providing care to COVID patients more than just nursing homes? It depends depending on whether they come within the terms of the PrEP Act and the statute and whether they qualify. Most health care providers could be covered as federal officers for this limited period of time, recognizing that the PrEP Act and this argument of ours that we were acting as federal officers is time limited to a very specific, unique, and rare occurrence that happens once in a lifetime. So we're not opening this to be... We hope once in a lifetime. We hope, yes. So we're not contending that this is a limitless federal officer designation, but that it is true for the time period in which we are responding to this pandemic. So in Watson, Philip Morris had a special relationship with the FTC and even had been delegated authority to conduct testing and so on. What kind of special relationship did nursing homes have with an agency the way Philip Morris? And, of course, Philip Morris lost. That was remanded. What kind of special relationship do you have with an agency like that? We have the CMS and the CDC that were highly regulatory and actually indicated in their pronouncements at the beginning of this pandemic that they were enlisting the aid of our nursing homes to respond to the pandemic and mitigate the spread of the pandemic. So the federal government expressly directed and targeted nursing homes with detailed new mandatory directives regarding infection control and virtually every other imaginable response to the spread of COVID-19 in nursing homes. Indeed, in March of 2020, early in this pandemic, the CDC acknowledged that the federal government was taking critical steps to prepare health care facilities to respond to COVID-19 to meet the critical needs of the country. This is certainly a conscription of the existing structure and these facilities to aid the federal government in this national response. Were there reporting requirements or did the nursing homes help to develop rules? What kind of interaction was there between the nursing homes and the federal agencies? There were reporting requirements. The nursing homes were required to conduct surveys and report the survey results. They were required to report test results and cases within the nursing homes, statistics regarding that. Is that in the record at all or in the complaint? Is it in the complaint? In the record. With the record. It is in our request for judicial notice. We've identified some of those directives and some of that relationship that exists, special relationship that existed. And the argument has been made that these are just simply guidelines, but clearly they were. Are there any penalties if you don't comply? Yes, they were clearly subject to penalties and the ultimate penalty of losing your license to act as a nursing home. So the consequences were dire and certainly could not be construed as merely guidance or suggestions. It was it was much more dire consequences that could occur if these these directives were not followed. And the federal government expected that they'd be followed because this was an effort to respond to this pandemic. We should move on to the PrEP Act. I'd be happy to do so, Your Honor. Thank you. The complete preemption argument that we make is based on the PrEP Act, and it is important in evaluating this the completely preemptive effect of the statute to look at the the history, the context and also, of course, the statutory language. And it's clear from the statutory text, the purpose of this enactment and the context that Congress intended, that COVID-19 related claims against nursing homes, which are part of the critical infrastructure of this in this country, be decided exclusively exclusively in federal court. First of all, the purpose in enacting the PrEP Act was that Congress planned ahead for public health emergencies such as the COVID-19 pandemic by giving the secretary of the Department of Health and Human Services broad powers, emergency powers for a limited time period and a specific purpose to address the national health emergencies. That brings up an interesting issue. You know, some of the directives go a little bit further and talk about court jurisdiction. Are we obligated to defer to HHS's views on jurisdiction? Well, I think that, first of all, that the Congress gave very broad powers to the secretary under this act. And in fact, specifically provided that there could be no judicial review of any action taken by the secretary to this enactment. But Congress did not bestow a Juris Doctor degree on the secretary. And it seems to me that preemption is a subject that is more legally focused than health and social services. Yes, Your Honor. And I do believe that the both the secretary and the Office of General Counsel have expressly set forth what they believe the legal basis is for fine for this court to find that the act is a completely preemptive act in talking about the expressing the need for a uniform federal response to this pandemic. And do we have Chevron deference to that or just give more respect? I believe that this court should exercise Chevron deference to the legal issue. This is a legal issue, right? Jurisdiction is a legal issue, but the court should give Chevron deference to the agency's interpretation of the statute that provides that states that there are important, significant, substantial federal issues, policy and legal interests in a uniform outcome. Smith versus Berryhill, the U.S. Supreme Court case from 2019, sort of torpedo that. I thought they made pretty clear that there's no deference in that kind of situation. Maybe I just I don't want to throw you off by throwing you a case that maybe you're not familiar with. Thank you, Your Honor. I will. That's fine. But I will say that even if Chevron deference does not apply, that this court should consider giving Skidmore deference because the agency and it's through and its Office of General Counsel, which has expressly been incorporated into the declaration by the secretary, have clearly stated that they're that their interpretation, they've given a persuasive interpretation of the reasons why that this statute should be treated as completely preemptive. The exclusive cause of action in the PrEP Act is for willful misconduct. And as I read the plaintiff's claims, they're negligence based. How do you how do you fit them into willful misconduct? Well, I do believe that they allege they do allege some conduct that perhaps they would attempt to construe as willful misconduct. But it's not the allegations of the complaint that determine whether the statute is completely preemptive. We go. It's not the well-completed complaint rule that applies. This is an exception. And it's also not of concern at this point in determining whether or not there's jurisdiction, because we're just determining not the nature of the relief that's available at this point, but whether or not jurisdiction attaches to this court's opinion. So the allegations of the complaint, which also, of course, are subject to amendment after discovery. And perhaps that's appropriate. It can be appropriate. And some of these cases would not govern this court's determination on complete preemption. So taking Judge Porter's question, what would happen if we agreed with you? We reversed. Would it be that you'd file a motion based on, I guess, failure to exhaust administrative remedies and see what happens or transfer to D.C. District of Columbia? I don't know. What would you do? I think I wouldn't dare go back to D.C. I think that what would happen would be that the court would then determine the application of the PREP Act, determine whether the claims are immunized from suit and liability. And if there is a potential for jurisdictional discovery as needed, they would allow for that, as has occurred in several district court cases, to determine whether or not the PREP Act applies. If there is complete immunity from suit and liability, then the only remaining cause of action that would be left would be a potential cause of action for willful misconduct that should be then transferred to the district court in the District of Columbia. Anything left would be remanded to the state court, I guess, right? Well, or the court could exercise supplemental jurisdiction over the state law claims if it wished. OK. Yes. I see my time is up. Thank you. OK. We'll hear your rebuttal. Thank you. Thank you. Good morning, Your Honor. Good morning. Neil Lipinski from the law firm of Gordon Forness and Mamarella. For the plaintiffs and appellees, families of men and women who died of COVID-19 while in the care of the defendant nursing homes. My colleague mentioned that the pandemic was once in a lifetime disaster. I hope that is the case. But there was the H1N1 declaration. And before that, there was Ebola. And we all listen to the news. This is not likely to be the last pandemic. So it's not the last time that there might be a glut, unfortunately, God forbid, of these cases in the system. Just wanted to address your questions about the difference between subjection and control versus compliance. I want to first address what my colleague pointed out as critical infrastructure. The basis of that, as I understand it, is President Obama's 2013 designation. I think 16 areas of the economy that are part of the critical infrastructure, the nation's critical infrastructure. They included things like transportation, food processing, agriculture. That cannot be helpful in deciding whether or not there's a special relationship here. I hope that's helpful. As for whether or not all health care providers would be in the same boat as these nursing homes. Now, my colleague's argument, they would be. That could be hospitals. That could be schools to the extent school nurses are involved. It could be any number of corporations that have their own in-house medical team. I'm from Delaware. DuPont had one forever. They would be trying to provide, if they were accepting Medicare, subpart B, the same kind of advice. Or other PPP monies, which I think Judge McNulty correctly points out, which all of these entities did. They would be making the same argument. Also, reporting requirements. It is in, I want to say, the judicial notice records that there was almost an immediate suspension of audits by HHS, by CMS, of health care facilities. And I'm forgetting the handle they placed on the replacement process, the substitute process. Something like, you know, an action report. So if there was a complaint of some sort that required an emergency response by the federal government in terms of an audit now to see if there was CFR compliance. That was still in place after the start of the pandemic. But I want to highlight that. What we're talking about here is CFR compliance under subpart B. Everything else is guidance. Everything else is support and assistance. What was in place, and we've talked about this in our papers, the original IPCP infection protection and control program, is what lays out what these nursing homes have to have in place in terms of a team, policies, procedures, prevent the spread of infection. So when a complaint generally alleges that you failed to protect folks from COVID-19, and then in order to meet the cleaning requirements uses more specificity in the way those things may happen, that is a classic subpart B slash New Jersey State Department of Health, or name your local health boards, regulations, medical malpractice and negligence claim. And that's what this is. With that said, I want to point out one more distinction, and that is in my colleagues' papers, our argument was, with regard to acting under federal officer jurisdiction, was distilled to a misunderstanding of the law such that in order to be acting under, our position was purported to be that these nursing homes had to act at the behest of the federal government. That was not our argument. Our argument was that these nursing homes are not doing a job that the federal government would otherwise have to do while being funded and under contract and directed by the federal government. I think that is the real Watson standard. And that is not a standard that the defendants have met here. So if the court has no questions on federal officer jurisdiction, I will segue to complete jurisdiction, which I should begin by saying I think what really is going on here, what the defendant's argument is, is an expressed jurisdiction argument. I think they're trying to draw distinctions between the Parker case, district court case here in Pennsylvania, and the New York case, the Casablanca case. Those cases are all fours in our opinion, and we read them as express preemption cases. But we've talked enough about the standard of complete preemption. I want to get into what I think the rub is, and it is the word administration and its effect as it carries through the relevant OGC opinion, that's the October 22 opinion, I think it's 20-04. And the nature of the complaint itself. So if you'll bear with me, I will try to do what I think we ought to do and look at the statute. So as you're all aware, the OGC opinion basically was an attempt to say that New York case, Casablanca, was not good law, was not sound reasoning. It ignores the notion that in the amendment to the declaration, the secretary talked about administration in the form of management and supervision, not administering a drug. And so with that thought process in mind, and other examples or hypotheticals given by the secretary. You know, we talked to your friend about HHS's views on jurisdiction. Leaving that aside, shouldn't we be deferring, though, to the secretary's interpretation of PrEP Act immunity? So two answers to that. I still think that a deferral to the secretary's amendment falls in the world of Meade, not Chevron Zero sort of analysis. Is it persuasive? There's no... I don't know. I mean, it's pretty, I mean, paragraph B says that the declarations have the force and effect of law. I mean, that's pretty extraordinary. That is where it gets interesting. And that is, what are the parameters? What's the ambit of section B? And section B reads that the secretary can set conditions for, and then it lists the very actions, among them administration, that under which covered persons and covered countermeasures in relation will be provided immunity. So the question then is, does that set the... does that empower the secretary to define, further define the word administration? Because that's what the secretary attempted to do. But more than that, we don't get the complete preemption because we then turn back to the statute in context. And we say, did the secretary exceed the ambit of his or her authority? And when we look at the statute, we try to figure out, well, what did Congress mean when it said administration? Because it would seem to me that the conditions of administration doesn't mean redefine the term. So as I review the statute, we start with subsection A1, which says covered persons are immune, where they are engaged in activities related to covered countermeasures. And one of those activities is administering to or used by an individual of a covered countermeasure. So right off the bat, Congress is saying that's what we think administering is, administering a dose to. Because it's also clear historically, H1N1, Ebola, we're talking about vaccines. This is the first pandemic where covered countermeasures seem to... So if a vaccine causes a complication, the federal government will step in in that situation. That is correct. Yes, Your Honor. So how do we know that? Well, we read further. Congress puts two conditions on that immunity, and they show up in subsections A3 and A4. I want to draw your attention specifically to, I think it's subsection C of 3 and B of 4, the point being that those are the subsections that speak to planners, program planners. Because I understand the defendant's argument to be, we are nursing homes, we are program planners. We have to manage the administration of these covered countermeasures. Therefore, if we're engaged in thoughtful allocations, so to speak, not nonfeasance, we too get immunity. The problem with those arguments is in the conditions placed under those subsections on program planners, the immunity provided under paragraph 1 with respect to a covered countermeasure applies only if, in the case of a covered person who is a program planner, with respect to the administration or use of the countermeasure, the countermeasure was administered to or used by an individual and in the qualifying requirements. He's in the population and the geographic area designated in the declaration. Here it's universal. It's anybody, anywhere. The point being there, Congress is expressly stating if you get immunity qualified planner for your planning, it has to be in conjunction with a covered countermeasure being administered to someone or used by someone. That's someone being the plaintiff. Here, none of the allegations are of the use. It could be use or nonuse, right, according to what the secretary says. No, I don't think that's right, Your Honor. I don't think the secretary says that. I think it's the OGC opinion that first introduces that. Well, yes, HHS says it. And that's trying to make up for the Casablanca analysis. And this is the starting point of the Casablanca analysis out of New York State Court. But I can go further to explain why Casablanca is not. Let me get granular here a little bit. Sure. I noticed on page 119 of the appendix, it's paragraph 14 of the Maglioli complaint. I don't know whether you really need to look at it, but you can. But basically it alleges defendants' management provided masks only to registered nurses, not to others who also interacted with residents. Now, if we accept the HHS's interpretation on the nonuse and use issue, isn't this allegation preempted? Interestingly, we say no for this reason. Not all masks are covered countermeasures. So under the statute and the empowering regs, FDA approved and NIOSH approved masks, N95 masks that we heard about so much in the news. That's not what the complaint says. The complaint does not invoke federal law. And that's why I think what should have been an express preemption argument in which we'd be using the well-pleaded complaint rule, was jettisoned by defendants in favor of the harder complete preemption argument because of that distinction that your Honor is drawing out right now. Had we inartfully pled the complaint, perhaps, which hasn't been brought up in the papers, then they could say, well, it's complete preemption and you intentionally left out NIOSH or FDA or covered countermeasure. There's no indication of that at all. People were scrambling to get masks of any kind. So when the plaintiff alleges masks were given to some and not others, that does not invoke the PREP Act. If we disagree, though, isn't it properly in federal court because it's preempted? So no, because you get to the rest of the test of preemption, which I think is also embedded in the statute, and that is does this statute provide the complete preemption test? An exclusive federal remedy, an exclusive federal cause of action, and does it lay out under all of the permutations of causes of actions the procedures and the remedies for the plaintiffs? And the answer is no, and it's clear in the willful misconduct cause of action that Judge Porter pointed out. We have argued that's just really a carve-out of the immunity defense as opposed to an actual cause of action. But that cause of action would be unavailable to these plaintiffs because if you look at the statute itself, I'm going to skip ahead a bit in my notes. We go to subsection C of the statute, and it reads, a program planner or qualified person shall not have engaged in willful misconduct. Again, this is the defense to a willful misconduct charge. As a matter of law, where such program planner or qualified person acted consistent with the applicable directions, guidelines, or recommendations by the secretary regarding the administration or use of a covered countermeasure, it goes on to say provided that notice of the information regarding the serious physical injury or death from the administration or use of a covered countermeasure that is material to the plaintiff's alleged loss within seven days of the actual discovery of such information by such program planner or qualified person. I'm outside the quote now. It's reported back to the federal government. So what the federal government is saying is you have a defense to the immunity claim only if that person, you've reported that the person was harmed when you administered to him or he used the covered countermeasure. Neither one of those is management. Within seven days. Within seven days. Thank you, Your Honor. Now, pleading with particularity under the same section, this is C3. In action under subsection D, D is the actual carve-out for wealth and misconduct. The complaint shall plead with particularity each element of the plaintiff's claim, including A, each act or omission by each covered person sued. I'm sorry, where are you reading from? I'm sorry, this is the statute itself, the PREP Act, 247D6D, subsection C3. Okay. Pleading with particularity, I believe is the title. And what must be pled with particularity is each action or omission that would constitute willful misconduct relating to the covered countermeasure administered to or used by the person on whose behalf the complaint was filed. So even a claim relating to administration can only be brought for willful misconduct, excuse me, by the person who was injured by the covered countermeasure that was administered to him or by its use, or his survivors, which is another section of the statute. And to emphasize that even more, and this might be my final point, if we read, oh, I believe it's subsection E4C, you'll see materials required that have to accompany a complaint in the D.C. District Court. And they include an affidavit of a physician, not unlike the many affidavits of merit that are required for malpractice actions across the various states. But this one must certify and explain the basis for such a physician's belief that such person suffered the serious physical injury or death alleged in the complaint and that such injury or death was proximately caused by the administration or use of the covered countermeasure. So it's the administration that has to cause the death. Or lack thereof, according to HHS, right? Well, according to an OGC opinion, that doesn't have the weight of law and says so on its face and doesn't deserve deference under share bond zero because everything we just read in the statute is absent from the OGC opinion. And therefore, without the power to persuade, there's only the statute itself. And the statute points exactly in the opposite direction. And my time is up. There's nothing else. If your complaint alleged willful misconduct, would those claims be preempted? If the claim were, and I'll address that in two parts. The first is if we were to say willful misconduct because we didn't get a covered countermeasure, which I think is perhaps a reading of that one sentence. Because we didn't get a what? We didn't get a covered countermeasure. The answer would be no. Because in order to plead to meet the specificity requirements of the statute, we would have had to have died from the administration of the covered countermeasure or died using the covered countermeasure, meaning administered to. That's consistent with the condition on immunity for manufacturers and distributors all the way back at subsection A4B. And this sentence is important to answer your Honor's question. And that is if you're a manufacturer distributor, provided anyone claims a loss related to a covered countermeasure being administered to or used by him, it doesn't matter whether that person is inside or outside of the geographic and population scope of the declaration. But the way Congress wrote it was the immunity applies without regard to whether such countermeasure was administered to or used by an individual in accordance with 3C. So the party who suffers the loss isn't administering in the management and supervision sense. So when it says loss is related to covered countermeasures being administered or used by him, we're talking about the victim. We're talking about the plaintiff, not the folks back at home base who are doing the planning. So just to put a finer point on that, not only would we not be able to bring a willfulness conduct claim for this conduct based on the language of the statute, we couldn't even access the Victim's Compensation Fund, I forget the acronym, CIFP, because the regs that support that, 42 CFR section 110.10 and 110.20 and 110.11, all point to the same thing. You have to demonstrate to the government to be able to be a beneficiary that you were seriously injured by administration of the covered countermeasure to you or that you were injured in using the covered countermeasure. So there is no remedy and therefore no cause of action for my clients and therefore no complete preemption. Okay. Thank you, Counsel. Thank you, Your Honor. We'll hear rebuttal. Thank you, Your Honors. One of the really troubling aspects of the arguments just made here and in the briefs by the plaintiffs is the fact that they completely ignore that Congress, in enacting the PREP Act, has given very broad authority to the Secretary to make declarations that address specific unknown future and hopefully rare events that are uniquely within the Department of Health and Human Services scientific knowledge and expertise and ability to access resources and to understand resources. The argument that, for example, administration must be defined in a particular manner, according to the statutory language in the PREP Act, ignores the fact that, A, the PREP Act does not define administration, the term administration. It defines a lot of other terms. Clearly ignores the fact that the Congress has provided that there shall be no court of the United States or of any state shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection. And ignores the fact that this broad power given to the Secretary is not subject to notice and comment rulemaking procedures, but rather all the Secretary has to do is report to Congress the reasons why he's made these declarations. How does that relate to this argument? Okay, so the Secretary has all that discretion. That doesn't go to the preemptive nature of these claims, does it? Well, not that particular argument, but I was addressing the fact that the Secretary has defined the term administration to include program planners and qualified persons, which we are. But I think when you look at the overall structure of the PREP Act, it does provide for complete preemption. And the more time you spend with the PREP Act, the more completely preemptive it appears to be. It's very strongly preemptive. And that's because of the broad immunity that it provides for both suit and liability, that it expressly preempts any conflicting state or federal laws. It provides an exclusive federal administrative fund that has already been funded by Congress for these types of claims. It provides an exclusive federal venue, the District Court of the District of Columbia, to hear willful misconduct claims, which are the only carve-out. And it provides that no court has any subject matter jurisdiction to review any action by the Secretary under this legislation. So taken in toto, looking at all of the terms of the statute and the Secretary's declarations and the advisory opinions which have been expressly incorporated into the Secretary's declarations, this court ought to defer to the Secretary's exercise of its broad powers in this emergency and consider how the Secretary has construed the statute to be completely preemptive of any other claims. Well, now, your friend mentioned, when I asked him about the use versus non-use distinction, he, well, you heard what he said. Do you, should we give that? What kind of deference should we give it? Absolutely, the court ought to defer to the distinction that the Secretary and Office of General Counsel have given to use versus non-use as a particular unique manner in which this statute is to be interpreted. And the allegations of plaintiff's complaint are a classic allocation allegation that falls within the conscious decision-making analysis that the General Counsel and the Secretary have provided for determining whether these claims are considered part of the administration of a program, which, in their opinion, extends to non-use in certain circumstances of covered countermeasures. Well, I gave your friend an example from one of the complaints, paragraph 14, about how defendants' management provided masks only to registered nurses, not to others. Is that in itself enough to, is that preempted about masks? I think that's a classic allocation of scarce resources issue that is preempted by the PREP Act and the interpretations of the PREP Act by the Secretary and the General Counsel. Now, your adversary said, well, masks may not be covered countermeasures. Do you have a response to that? Well, covered countermeasures has been broadly defined by the Secretary. There's a link, actually, in the Secretary's, I think, First Amendment to the declaration that provides for a broad category of products and other items that are considered to be covered countermeasures. And I think that clearly, at least at this stage, that face masks are considered part of that, a product that is intended to mitigate the spread and falls within the statutory language. Okay. Do you have anything, Dave? If the Court has nothing further. Okay, thank you. Thank you. We thank you so much. And we thank both counsels for their excellent briefing and argument today. We're going to take the case under advisory.